WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Ronald M. Arlas, Esq., SBN 59091
Nicole R. Hoffman, Esq., SBN 273450
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660 *(Elliott, Naomi/Pleadings/MTD)*
Telephone: (949) 477-5050; Facsimile: (949) 608-9142

WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Ronald M. Arlas, Esq., SBN 59091
907 Sir Francis Drake Blvd.
Kentfield, CA  94904
Tel: (949) 477-5050; Fax: (949) 608-9142
rarlas@wrightlegal.net

Attorneys for Defendants, POWER DEFAULT SERVICES, INC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.; AND U.S. BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR MASTR ADJUSTABLE RATE MORTGAGES TRUST
2007-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1*(erroneously sued
as "U.S. Bank National Association")*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE

| | |
|---|---|
| NAOMI ELLIOTT AND L.T. KENNEDY JR., ) <br><br> Plaintiffs, ) <br><br> vs. ) <br><br> MORTGAGE ELECTRONIC ) <br> REGISTRATION SYSTEMS, INC.; POWER ) <br> DEFAULT SERVICES, INC.; AND U.S. ) <br> BANK NATIONAL ASSOCIATION, ) <br><br> Defendants. ) <br> _____ ) | Case No.:  5:12-cv1204370 HRL <br><br> *Judge Howard R. Lloyd* <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF  MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF** <br><br> **[FRCP Rule 12(b)(6)]** <br><br> *[Filed Concurrently with Motion To Dismiss]* <br><br> Date:    October 2, 2012 <br> Time:    10:00 a.m. <br> Dept.:   2-5th Floor |

-i-

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS

1   **TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR**

2   **ATTORNEY OF RECORD:**

3       **PLEASE TAKE NOTICE** that Defendants, POWER DEFAULT SERVICES, INC.;

4   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND U.S. BANK,

5   NATIONAL ASSOCIATION, AS TRUSTEE FOR MASTR ADJUSTABLE RATE

6   MORTGAGES TRUST 2007-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES

7   2007-1(*erroneously sued as "U.S. Bank National Association"*)hereby requests pursuant to

8   *Federal Rules of Evidence ("*FRE")*, Rule 201, that the Court take judicial notice of the

9   following documents that are publicly recorded documents which are put at issue by Plaintiffs

10  NAOMI ELLIOTT AND L.T. KENNEDY JR.

11      1.    Interspousal Transfer Deed, recorded on February 8, 2006 as document number

12  18800083 in the Official Records of Santa Clara County.  (A true and correct copy of which is

13  attached hereto as Exhibit "A.")

14      2.    Grant Deed, recorded on October 26, 2006 as document number 19157784 in the

15  Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as

16  Exhibit "B.")

17      3.    Deed of Trust, recorded on October 26, 2006 as document number 19157785 in

18  the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto

19  as Exhibit "C.")

20      4.    Notice Of Default recorded on November 17, 2009 as document number

21  20510946 in the Official Records of Santa Clara County.  (A true and correct copy of which is

22  attached hereto as Exhibit "D.")

23      5.    Substitution of Trustee recorded on July 28, 2010 as document number 20795060

24  in the Official Records of Santa Clara County.  (A true and correct copy of which is attached

25  hereto as Exhibit "E.")

26      6.    Assignment Of Deed Of Trust recorded on May 21, 2010 as document number

27  20719224 in the Official Records of Santa Clara County.  (A true and correct copy of which is

28  attached hereto as Exhibit "F.")

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS

7.      Notice of Trustee's Sale recorded on July 28, 2010 as document number 20795061 in the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as Exhibit "G.")

8.      Assignment of Deed of Trust recorded on July 5, 2011 as document number 21226528 in the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as Exhibit "H.")

9.      Substitution Of Trustee recorded on July 5, 2011 as document number 21226529 in the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as Exhibit "I.")

10.     Notice of Trustee's Sale recorded on July 5, 2011 as document number 21226530 in the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as Exhibit "J.")

11.     Trustee's Deed Upon Sale recorded on August 2, 2011 as document number 21226512 in the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as Exhibit "K.")

12.     Grant Deed recorded on February 23, 2012 as document number 21547162 in the Official Records of Santa Clara County.  (A true and correct copy of which is attached hereto as Exhibit "L.")

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: August 27, 2012          By:     /s/ Nicole M. Hoffman, Esq.
                                        T. Robert Finlay, Esq.
                                        Ronald M. Arlas, Esq.
                                        Nicole M. Hoffman, Esq.
                                        Attorneys for Defendants, POWER DEFAULT
                                        SERVICES, INC.; MORTGAGE ELECTRONIC
                                        REGISTRATION SYSTEMS, INC.; AND U.S.
                                        BANK, NATIONAL ASSOCIATION, AS
                                        TRUSTEE FOR MASTR ADJUSTABLE RATE
                                        MORTGAGES TRUST 2007-1, MORTGAGE
                                        PASS-THROUGH CERTIFICATES, SERIES
                                        2007-1

-iii-

# EXHIBIT "A"

DOCUMENT:   18800083                Pages · 2

Fees          30 00
Taxes        974 60
Copies
AMT PAID   1004.60

RECORDING REQUESTED BY
Alliance Title Company
AND WHEN RECORDED MAIL TO

BRENDA DAVIS                          RDE #  101
SANTA CLARA COUNTY RECORDER          2/08/2006
Recorded at the request of            8:00 AM
Alliance Title Company

Name        Naomi Elliott
Street      2648 Lombard Avenue
Address     San Jose, CA 95116
City,State
Zip

Order No.  11409887-411-CHO

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# INTERSPOUSAL TRANSFER DEED
**(Excluded from Reappraisal Under Proposition 13)**

THE UNDERSIGNED GRANTOR(s) DECLARE(s)

Documentary Transfer Tax is $ 243.65 THERE IS NO CONSIDERATION FOR THIS TRANSFER. X _____
City of San Jose Conveyance Tax 9730.95                                       L.T. Kennedy
Parcel No. 484-45-040

This is an INTERSPOUSAL TRANSFER under Sec. 63 of the Revenue and Taxation Code.  Grantee(s) has (have)  checked the applicable exclusion:
(☐)   From joint tenancy to community property
(☐)   From joint tenancy to tenancy in common
(☐)   From one spouse to both spouses         (see below)
(☐)   From one spouse to the other spouse     (see below)
(☒)   To relinquish any community interest and to vest said property
        in the name of the grantee as his/her sole and separate property
(☐ )  Other _____

GRANTOR(S):
L.T. Kennedy, spouse of the grantee herein

hereby GRANT(S) to  Naomi Elliott, an unmarried woman and Christine Kennedy, a married woman as her sole and separate property ,
                              as joint tenants
the following real property in the City of San Jose
County of Santa Clara, State of California:
See Exhibit A attached hereto and made a part hereof.

Dated:  January 30, 2006
STATE OF CALIFORNIA
COUNTY OF  Santa Clara                                S.S.

On  January 30, 2006                      before me,            _____
                                                                L.T. Kennedy
Karin Chou

a Notary Public in and for said County and State, personally appeared

L.T. Kennedy

~~personally known to me~~ (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the
within instrument and acknowledged to me that he/~~she/they~~ executed
the same in his/~~her/their~~ authorized capacity(ies), and that by
his/~~her/their~~ signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

```
KARIN CHOU
COMM. #1574187
Notary Public · California
Santa Clara County
My Comm Expires Apr. 29, 2009
```

(This area for official notorial seal)

Exhibit A

All that certain real property situate in the City of San Jose, County of Santa Clara, State of California, described as follows:

Lot 38, as shown on that certain Map of Tract No. 2478 Parkland Manor, which Map was filed for record in the office of the Recorder of the County of Santa Clara, State of California on October 19, 1959, in Book 113 of Maps, page(s) 11.

EXCEPTING THEREFROM the underground water or rights thereto, with no right of surface entry, as granted to San Jose Water Works, a California Corporation by Instrument recorded December 07, 1959 in Book 4628, page 177, Official Records.

# EXHIBIT  "B"

RECORDING REQUESTED BY
Alliance Title Company
AND WHEN RECORDED MAIL TO

Name   Naomi Elliott
Street
Address   2648 Lombard Ave
City,State   San Jose, CA
Zip   95116

Order No. 11487742-001-RH1

APN No: 484-45-040

DOCUMENT:   19157784          Pages:   2

Fees...         30.00
Taxes...      1100.00
Copies..
AMT PAID     1130.00

BRENDA DAVIS                    RDE # 007
SANTA CLARA COUNTY RECORDER     10/26/2006
Recorded at the request of      8:00 AM
Alliance Title Company

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
City of San Jose
Conveyance Tax is $825.00
Parcel No. 484-45-040

Documentary Transfer Tax is $275.00
☒ computed on full value of interest or property conveyed, or
☐ full value less value of liens or encumbrances remaining at the time of sale
_____ Declarant or Agent Determining Tax

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Naomi Elliott, an unmarried woman and Christine Kennedy, a married woman as her sole and separate property, as joint tenants

hereby GRANT(s) to

Naomi Elliott, an unmarried woman

the following real property in the city of San Jose

county of Santa Clara, state of California:

See Exhibit A attached hereto and made a part hereof.

Dated:  October 20, 2006

STATE OF CALIFORNIA
COUNTY OF Santa Clara

} S.S.

On October 20, 2006 before me,

Karin Chou

a Notary Public, personally appeared

Naomi Elliott & Christine Kennedy

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Karin Chou_

Naomi Elliott

Christine Kennedy

KARIN CHOU
COMM. #1574187
Notary Public - California
Santa Clara County
My Comm Expires Apr. 29, 2009

(This area for official notorial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON THE FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

Name                     Street Address                     City & State

Exhibit A

All that certain real property situate in the City of San Jose, County of Santa Clara, State of California, described as follows:

Lot 38, as shown on that certain Map of Tract No. 2478 Parkland Manor, which Map was filed for record in the office of the Recorder of the County of Santa Clara, State of California on October 19, 1959, in Book 113 of Maps, page(s) 11.

EXCEPTING THEREFROM the underground water or rights thereto, with no right of surface entry, as granted to San Jose Water Works, a California Corporation by instrument recorded December 07, 1959 in Book 4628, page 177, Official Records.

# EXHIBIT "C"

ATC-1148772-RH

Recording Requested By:

**Alliance Title Company**

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747

Prepared By:
Kindred Ross
75 Rowland Way
Suite 250
Novato, CA
94945

DOCUMENT: 19157785

Pages: 23

Fees.. 75 00
Taxes.
Copies.. _____
AMT PAID 75.00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Alliance Title Company

RDE # 007
10/26/2006
8:00 AM

—————— [Space Above This Line For Recording Data] ——————

# DEED OF TRUST

MIN  100024200014511600

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **October 20, 2006** together with all Riders to this document.
(B) "Borrower" is **Naomi Elliott, an unmarried woman**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **American Brokers Conduit**

Lender is a **Corporation**
organized and existing under the laws of **State of New York**

DOC #:324541                         APPL #:0001451160
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

VMP ®-6A(CA) (0005).01
Page 1 of 15    UM31 9906.01    Initials: N/C

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is  538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is Alliance Title Company

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  October 20, 2006          .
The Note states that Borrower owes Lender  Five Hundred Thousand  and No/100

Dollars

(U.S. $500,000.00                  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       November 1, 2046          .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider        [X] Other(s) [specify]
  PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324542             APPL #:0001451160

Initials: N/E

-6A(CA) (0005).01              Page 2 of 15                              Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                           of Santa Clara                                           :

       [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number:  484-45-040                          which currently has the address of
2648 Lombard Avenue                                                              [Street]
San Jose                                 [City] , California 95116          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543                    APPL #:0001451160

Initials: _N/E_

@-6A(CA) (0005).01                  Page 3 of 15                          Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC #:324546                    APPL #:0001451160

-6A(CA) (0005).01                    Page 6 of 15          Initials: _N.E._          Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC  #:324548                    APPL #:0001451160

Initials: _N/E_

-6A(CA) (0005).01                    Page 8 of 15                    Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC  #:324549                              APPL #:0001451160

Initials: _N.E_

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC  #:324553                    APPL #:0001451160

Initials: _NE_

-6A(CA) (0005) 01                Page 13 of 15                    Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                     Naomi Elliott                -Borrower

_____

_____ (Seal)            _____ (Seal)
                         -Borrower                                            -Borrower

_____ (Seal)            _____ (Seal)
                         -Borrower                                            -Borrower

_____ (Seal)            _____ (Seal)
                         -Borrower                                            -Borrower

**State of California**
**County of** Santa Clara

}  ss.

On October 20, 2006          before me,  Karin Chou, Notary Public

personally appeared

Naomi Elliott

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~ authorized capacity~~(ies)~~, and that by ~~his/her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

KARIN CHOU
COMM. #1574187
Notary Public - California
Santa Clara County
My Comm. Expires Apr. 29, 2009

DOC #:324555          APPL #:0001451160

Initials _N.E._

-6A(CA) (0005).01          Page 15 of 15          Form 3005  1/01

File No. 11487742-001- RH1



**LEGAL DESCRIPTION**

All that certain real property situate in the City of San Jose, County of Santa Clara, State of California, described as follows:

Lot 38, as shown on that certain Map of Tract No. 2478 Parkland Manor, which Map was filed for record in the office of the Recorder of the County of Santa Clara, State of California on October 19, 1959, in Book 113 of Maps, page(s) 11.

EXCEPTING THEREFROM the underground water or rights thereto, with no right of surface entry, as granted to San Jose Water Works, a California Corporation by instrument recorded December 07, 1959 in Book 4628, page 177, Official Records.

ARB No:  484-45-40
APN No:  484-45-040

## ADJUSTABLE RATE RIDER

### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this ___20th__ day of __October, 2006__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____

__American Brokers Conduit__

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

__2648 Lombard Avenue, San Jose, CA  95116__

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__    OF THE ORIGINAL AMOUNT (OR $ __625,000.00__    ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER.   A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest at a yearly rate of __1.000__ % until __October 31, 2006__, and the initial monthly payment provided for in the Note will be based on this rate. Commencing __November 1, 2006__, I will pay interest at a yearly rate of __8.308__ %.  Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

AHM2029R(MULT) (0106)

Doc # 944735/Image: 944735.prn  App# 0001451160

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of ___December, 2006_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding __Three and 550 Thousandths_____ percentage points __3.550____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than _____9.950__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing _____December 1st, 2007_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

AHM2029R(MULT) (0106)

Doc # 944736/Image: 944736.prn   App# 0001451160

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated

### Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ____125.000%__ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ____125.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the _____Five_____ anniversary of the due date of the first monthly payment, and on that same day every ____Five____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note

Doc # 944737/Image: 944737.prn  App# 0001451160

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_Naomi Elliott_ _____(Seal)
Naomi Elliott            -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

AHM2029R(MULT)(0106)

Doc # 944739/Image: 944739.prn App# 0001451160

Loan #: __0001451160__

## PREPAYMENT RIDER TO SECURITY INSTRUMENT

THIS PREPAYMENT RIDER is made this __20th__ of __October, 2006__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to __American Brokers Conduit__

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

__2648 Lombard Avenue, San Jose, CA 95116__
[Property Address]

**PREPAYMENT COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first __three__ ( __3__ ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period. Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

**NOTICE TO THE BORROWER**
Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____

Naomi Elliott

# EXHIBIT "D"



| DOCUMENT: 20510946 | | Pages: 2 |
|---|---|---|

Fees.                  15.00
Taxes. .
Copies.               _____
AMT PAID         15.00

**Recording Requested By
and When Recorded Mail to:**

REGINA ALCOMENDRAS          RDE # 001
SANTA CLARA COUNTY RECORDER   11/17/2009
Recorded at the request of    4:05 PM
Recording Service

Default Resolution Network
17592 E. 17th Street, Suite 300
Tustin, CA 92780

Trustee Sale No: 09-06371-6.
Loan No: 0031393846

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $17,063.97 as of November 16, 2009, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact :



American Home Mortgage Servicing, Inc.
4875 Belfort Road Suite 130
Jacksonville, FL 32256
Phone: 877-304-3100   REF# 0031393846 .

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: Default has been declared under a Deed of Trust dated as of October 20, 2006, executed by NAOMI ELLIOTT, AN UNMARRIED WOMAN, as trustor (the "Original Trustor"), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as beneficiary, recorded on October 26, 2006, as Instrument No. 19157785 of Official Records in the office of the Recorder of Santa Clara County, California (the "Original Deed of Trust"), and that

The Deed of Trust encumbers certain property more particularly described therein (the "Trust Property"), and that

The Deed of Trust secures the  payment of and the performance of certain obligations, including but not limited to, the obligations set forth in a promissory note(s) with a face amount of $500,000.00, and that

A breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the trustor has failed to perform obligations pursuant to or under the Note and/or the Deed of Trust, specifically: failed to pay payments which became due;  together with late charges due; together with other fees and expenses incurred by the Beneficiary; and that

By reason thereof, the present beneficiary under such Deed of Trust, has delivered to said Trustee a Declaration and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(c) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code § 2923.5.

Date: November 17, 2009

Default Resolution Network
Agent for the Beneficiary By: LSI Title Company, its Agent

**EMMANUEL
WOLDEYOHANNES**

By:

EXHIBIT "E"



RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO
Fidelity National Title Company
17592 E. 17th Street, Suite 300
Tustin, CA 92780

DOCUMENT:  20795060

Pages:  3

Fees.        24 00
Taxes
Copies .
AMT PAID     24.00

REGINA ALCOMENDRAS          RDE #   011
SANTA CLARA COUNTY RECORDER  7/28/2010
Recorded at the request of   12:02 PM
Recording Service

Trustee Sale No. 09-06371-6 .

Space above this line for recorder's use only
Loan No. 0031393846

## SUBSTITUTION OF TRUSTEE

### see attached Affidavit

**WHEREAS, NAOMI ELLIOTT, AN UNMARRIED WOMAN**, was the original Trustor, ALLIANCE TITLE COMPANY, was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 10/20/2006 and Recorded on on October 26, 2006, as Instrument No. 19157785 of Official Records in the Office of the Recorder of Santa Clara County, California.

**WHEREAS,** the undersigned, the current beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided,

**Now, THEREFORE,** the undersigned hereby substitutes  Power Default Services, Inc. whose address is C/O Fidelity National Title Company  17592 E. 17th Street, Suite 300, Tustin , CA 92780, as Trustee under said Deed of Trust.

DATE: December 3, 2009

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC**

CINDI ELLIS, ASST VICE PRESIDENT

STATE OF CALIFORNIA                              }
                                                 }  SS.
COUNTY OF ORANGE                                 }

On _____, before me, Kraig M. Kirtley, Notary Public, personally appeared CINDI ELLIS who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument..

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal

Kraig M. Kirtley, Notary Public

KRAIG M. KIRTLEY
Commission # 1832689
Notary Public - California
Orange County
My Comm. Expires Feb 19, 2013

# Fidelity National Title Company

AFFIDAVIT OF MAILING

T.S. No. 09-06371-6

I declare that I am over the age of 18 years, and that my business address is 17592 E. 17th Street, Suite 300, Tustin, CA 92780.

A copy of the attached Substitution of Trustee was mailed to all those persons required by California Civil Code Section 2924b and in the manner required by Section 2934a[b].

Date: 7/16/2010

Signed: _____

**Michael Busby**

# EXHIBIT "F"

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc. Solely
As Nominee for American Brokers Conduit

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700

445462

APN: 484-45-040

DOCUMENT:   20719224                    Pages:   1

Fees .        18.00
Taxes    .
Copies.
AMT PAID      18 00

REGINA ALCOMENDRAS            RDE #  014
SANTA CLARA COUNTY RECORDER     5/21/2010
Recorded at the request of    12:51 PM
Recording Service

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U.S. Bank
National Association, as Trustee for MASTR Adjustable Rate Mortgages Trust 2007-1, Mortgage
Pass-Through Certificates, Series 2007-1 all beneficial interest under that certain Deed of Trust
dated October 20, 2006, executed by Naomi Elliott,  an unmarried woman, to Alliance Title
Company as trustee, for Mortgage Electronic Registration Systems, Inc. Solely As Nominee for
American Brokers Conduit, as beneficiary, and recorded as Instrument No. 19157785 on October 26,
2006, in the State of California, Santa Clara County Recorder's Office. Together with the money due
and to become due thereon with interest, and all rights accrued or to accrue under the instrument
secured by the

Dated: __April 21, 2010__        Mortgage Electronic Registration Systems, Inc. Solely
                                 As Nominee for American Brokers Conduit
                                 By: _____
                                 Its: _____Assistant Vice President_____

State of        **Florida**        )
                                   ) ss.
County of       **Duval**          )
On __April 21, 2010__ before me, __Genny Spence__, a Notary Public in
and for said state, personally appeared __Cynthia Stevens__, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Florida__ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

Notary Public State of Florida
Genny Spence
My Commission DD904551
Expires 03/16/2012

(This Area for Official Notary Seal)

000005-5469211-M

APR 2 6 2010

# EXHIBIT "G"



*Request by*
*and*
When Recorded Mail To:

Fidelity National Title Company
17592 E. 17th Street, Suite 300
Tustin, CA 92780

| DOCUMENT: | 20795061 | | Pages: | 2 |
|---|---|---|---|---|
| | | Fees | 21 00 | |
| | | Taxes. | | |
| | | Copies | ___ | |
| | | AMT PAID | 21 00 | |

REGINA ALCOMENDRAS       RDE # 011
SANTA CLARA COUNTY RECORDER    7/28/2010
Recorded at the request of    12:02 PM
Recording Service

Trustee Sale No. 09-06371-6 .       Loan No. 0031393846   ·    Title Order No. 090801099-CA-DCI

APN 484-45-040

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED October 20, 2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On August 17, 2010, at 11:00 AM, at the North Market Street entrance to the County Courthouse, 190 North Market Street, San Jose, CA,Power Default Services, Inc., as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on October 26, 2006, as Instrument No. 19157785 of Official Records in the office of the Recorder of Santa Clara County, CA , executed by: NAOMI ELLIOTT, AN UNMARRIED WOMAN, as Trustor, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be:

2648 LOMBARD AVE, SAN JOSE, CA

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee`s Sale is

estimated to be $614,981.11 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary`s bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier`s check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee`s Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

DATE: 7/16/2010

POWER DEFAULT SERVICES, INC., Trustee

By: Fidelity National Title Company, its agent 17592 E. 17th Street, Suite 300, Tustin , CA 92780, 714-508-5100

By: _____

Michael Busby, Authorized Signature

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.52(c) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has obtained an exemption from the state regulator that is current and valid and the additional 90 day period does not apply. This loan servicer has implemented a comprehensive loan modification program that meets the requirements of civil code section California Civil Code § 2923.53.

Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in Civil Code § 2923.53(k)(3) declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to Civil Code section 2923.53 that is current and valid on the date this notice of sale is recorded. The time frame for giving a notice of sale specified in Civil Code Section 2923.52 subdivision (a) does not apply to this notice of sale pursuant to Civil Code Sections 2923.52.

Fidelity National Title Company, as Agent for the mortgage loan servicer as defined under California Civil Code section 2923.53 (k)(3)

By: _____

Michael Busby, Authorized Signature

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.lpsasap.com AUTOMATED SALES INFORMATION PLEASE CALL 714-259-7850**

EXHIBIT "H"

DOCUMENT: 21226528

Pages: 1

Fees. . 18 00
Taxes..
Copies
AMT PAID 18.00

Requested and Prepared by:
AMERICAN HOME MORTGAGE SERVICING,
INC.

When Recorded Mail To:

1525 S. Beltline Road
Coppell, Texas 75019

09080109Q

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 007
7/05/2011
12:51 PM

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No.: 0031393846
TS No: 09-06371-6

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**U.S. Bank National Association, as Trustee for MASTR Adjustable Rate Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1,** c/o American Home Mortgage Servicing Inc. 1525 S. Beltline Road, Coppell, Texas 75019

all beneficial interest under that certain Deed of Trust dated as of October 20, 2006, executed by NAOMI ELLIOTT, AN UNMARRIED WOMAN, as the original grantor(s)/trustor(s), to ALLIANCE TITLE COMPANY, as the original trustee, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as the original beneficiary, recorded on October 26, 2006, as Instrument No. 19157785 of Official Records in the office of the Recorder of Santa Clara County, California (the "Deed of Trust")

TOGETHER with the obligations secured by the Deed of Trust, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of·Trust including the right to have reconveyed in whole or in part, the real property described therein.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Rolanda Wagner
Assistant Secretary     Date: 6-13-11

State of     Florida
County of     Duval     ) SS
On 6-13-11     before me, Brenda L. Frazier,
Notary Public, personally appeared     **Rolanda Wagner**
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of     **Florida**     that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Signature

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission # DD885641
Expires: APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

# EXHIBIT  "I"

DOCUMENT: 21226529

Pages: 2

Fees. .        21 00
Taxes...
Copies..
AMT PAID       21 00

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO
Fidelity National Title Company
1920 Main Street, Suite 1120
Irvine , CA 92614

REGINA ALCOMENDRAS          RDE #  007
SANTA CLARA COUNTY RECORDER  7/05/2011
Recorded at the request of  12:51 PM
Recording Service

0908O1099

Trustee Sale No. 09-06371-6 .

Space above this line for recorder's use only
Loan No. 0031393846

## SUBSTITUTION OF TRUSTEE
### see attached Affidavit

**WHEREAS**, NAOMI ELLIOTT, AN UNMARRIED WOMAN, was the original Trustor, ALLIANCE TITLE COMPANY, was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, was the original Beneficiary under that certain Deed of Trust dated October 20, 2006  and Recorded on October 26, 2006, as Instrument No. 19157785 of Official Records in the Office of the Recorder of Santa Clara  County, California.

**WHEREAS,** the undersigned, the current beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided,

**THEREFORE,** the undersigned hereby substitutes  Power Default Services, Inc. whose address is C/O Fidelity National Title Company  1920 Main Street, Suite 1120, Irvine, CA 92614, as Trustee under said Deed of Trust.

DATE: ____6/9/11____

By:  U.S. Bank National Association, as Trustee for MASTR Adjustable Rate Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1 by American Home Mortgage Servicing Inc., as Attorney in Fact

By: _____
           Josh Trussel

STATE OF ____Florida____ )
COUNTY OF ____Duval____ )

On ___JUN 1 0 2011___ before me, _____, a Notary Public, personally appeared ____Josh Trussel____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ____Florida____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
Signature _____          (Seal)

FELEICA CUTTER
Commission # EE 067650
Expires February 24, 2015
Bonded Thru Troy Fain Insurance 800-385-7019

# Fidelity National Title Company

AFFIDAVIT OF MAILING

T.S. No. 09-06371-6

I declare that I am over the age of 18 years, and that my business address is 1920 Main Street, Suite 1120, Irvine, CA 92614.

A copy  of the attached Substitution of Trustee was mailed to all those persons required by California Civil Code Section 2924b and in the manner required by Section 2934a[b].

Date: 6/29/2011

Signed: _____

Michael Busby

# EXHIBIT  "J"

Recording Requested
by and

When Recorded Mail To:

Fidelity National Title Company
1920 Main Street, Suite 1120
Irvine, CA 92614

| DOCUMENT:   21226530 | Pages:      2 |
|---|---|
| | Fees...        21.00 |
| | Taxes.. |
| | Copies.. |
| | AMT PAID       21.00 |

REGINA ALCOMENDRAS          RDE #   007
SANTA CLARA COUNTY RECORDER  7/05/2011
Recorded at the request of   12:51 PM
Recording Service

---

**Trustee Sale No. 09-06371-6 .**       **Loan No. 0031393846**       **Title Order No. 090801099-CA-DCI**

**APN 484-45-040**

### NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED October 20, 2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On July 27, 2011, at 11:00 AM, at the North Market Street entrance to the County Courthouse, 190 North Market Street, San Jose, CA, Power Default Services, Inc., as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on October 26, 2006, as Instrument No. 19157785 of Official Records in the office of the Recorder of Santa Clara County, CA , executed by: NAOMI ELLIOTT, AN UNMARRIED WOMAN, as Trustor, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be:

2648 LOMBARD AVE, SAN JOSE, CA

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is

estimated to be $630,469.90 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale.  Beneficiary's bid at said sale may include all or part of said amount.  In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right.  The property offered for sale excludes all funds held on account by the property receiver, if applicable.

DATE: 6/29/2011

POWER DEFAULT SERVICES, INC., Trustee

By: Fidelity National Title Company, its agent 1920 Main Street, Suite 1120, Irvine , CA 92614, 949-252-4900

By: _____

Michael Busby, Authorized Signature

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.lpsasap.com AUTOMATED SALES INFORMATION PLEASE CALL 714-730 - 2727**

# EXHIBIT "K"



WHEN RECORDED MAIL TO
and
MAIL TAX STATEMENTS TO:

U.S. Bank National Association, as Trustee for MASTR Adjustable Rate Mortgages
Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1
4875 Belfort Road, Suite 130
Jacksonville, FL 32256

DOCUMENT:   21264512

Pages:    3

Fees . . .          21.00
Taxes . .
Copies .
AMT PAID            21.00

REGINA ALCOMENDRAS          RDE #   007
SANTA CLARA COUNTY RECORDER  8/02/2011
Recorded at the request of   1:03 PM
Recording Service

---

Trustee Sale No. 09-06371-6    Loan No. 0031393846    Title Order No. 090801099-CA-DCI

# TRUSTEE'S DEED UPON SALE

APN  484-45-040

*This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title*

1st position
Darlene

The undersigned grantor declares:
1) The Grantee herein <u>was</u> the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was................. $657,777.73
3) The amount paid by the grantee at the trustee sale was ................ $657,789.73
4) The documentary transfer tax is...................................................... $00.00
5) Said property is in the City of SAN JOSE, Santa Clara County

POWER DEFAULT SERVICES, INC (herein called Trustee), as the duly appointed Trustee under
the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or
warranty, express or implied, to U.S. Bank National Association, as Trustee for MASTR Adjustable
Rate Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1 (herein called
Grantee), all of its right, title and interest in and to that certain property situated in the County of
Santa Clara, State of California, described as follows:

See Property Description Attached Hereto

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of
Trust dated 10/20/2006  and executed by NAOMI ELLIOTT, AN UNMARRIED WOMAN, as Trustor,
and recorded on October 26, 2006, as Instrument No. 19157785 of Official Records in the office of
the Recorder of Santa Clara County, CA, and after fulfillment of the conditions specified in said
Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the
Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the
Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and
publication of copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said
Deed of Trust, sold the herein described property at public auction on <u>**July 27, 2011**</u>. Grantee,
being the highest bidder at said sale, became the purchaser of said property for the amount bid
being **$657,789.73** in lawful money of the United States, or by credit bid if the Grantee was the
beneficiary of said Deed of Trust at the time of said Trustee's Sale.

1

Dated: July 27, 2011

POWER DEFAULT SERVICES, INC as Trustee
by Fidelity National Title, as its agent

**LISA ROHRBACKER, Authorized Signature**

State of California       }ss.
County of Orange     }ss

On July 27, 2011, before me, Shena Marie La Rue, Notary Public, personally appeared LISA ROHRBACKER, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Shena Marie La Rue # 1807664
My Commission Expires July 27, 2012

SHENA MARIE LA RUE
Commission # 1807664
Notary Public - California
Orange County
My Comm. Expires Jul 27, 2012

(Seal)

ORDER NO: 090801099

## EXHIBIT A

## LEGAL DESCRIPTION

**REF. NO. 09-06371-6**

LOT 38, AS SHOWN ON THAT CERTAIN MAP OF TRACT NO. 2478 PARKLAND MANOR, WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON OCTOBER 19, 1959, IN BOOK 113 OF MAPS, PAGE(S) 11.

EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO, WITH NO RIGHT OF SURFACE ENTRY, AS GRANTED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION BY INSTRUMENT RECORDED DECEMBER 07, 1959 IN BOOK 4628, PAGE 177, OFFICIAL RECORDS.

# EXHIBIT "L"

Recording REquested By
ServiceLink

MAIL TAX STATEMENT TO:
RAMKAMAL SINGH
2800 CROFT DR.
SAN JOSE, CA 95248

Prepared By:
ServiceLink
4000 Industrial Blvd.
Aliquippa, PA 15001

*2796334*

DOCUMENT:   21547162

Pages:   3

Fees ..      41.00
Taxes .    1179 20
Copies.
AMT PAID   1220.20

REGINA ALCOMENDRAS                  RDE #  005
SANTA CLARA COUNTY RECORDER         2/23/2012
Recorded at the request of          8·24 AM
Recording Service

For Recorder's Use Only

## Grant Deed

THE UNDERSIGNED GRANTOR (S) DECLARE (S) */294.00/ City TAX #$004.40*
DOCUMENTARY TRANSFER TAX: $
☐ FOR NO CONSIDERATION
☒ COMPUTED ON FULL VALUE of property conveyed, or
☐ COMPUTED ON FULL VALUE LESS VALUE OF LIENS AND ENCUMBRANCES remaining at time of sale.
☐ Unincorporated area of Santa Clara     ☒ City of SAN JOSE

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1**

Hereby grants to,

**RAMKAMAL SINGH,** A MARRIED MAN

The following described real property in the County of Santa Clara, State of CA.

LEGAL DESCRIPTION:

**See Exhibit A attached hereto and made a part hereof**

Tax ID Number 484-45-040

CA – Grant Deed (066001)          Order No: 2796334                    Page 1 of 3

*mail tax statement to address above*

Date: February 8, 2012

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MASTR ADJUSTABLE RATE
MORTGAGES TRUST 2007-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1

Nashadrian Vaughn **Assistant Secretary**

By: American Home Mortgage Services

_____

Its: Attorney in Fact

STATE OF ___TX___ )
                         )SS.
COUNTY OF __Dallas__ )

On this ___Feb 8, 2012___ appeared before me ___Lesley Jill Seat___, a Notary Public,
Nashadrian Vaughn   **Assistant Secretary** ___, personally known or proven
to me to be the person(s) whose name(s) is/are subscribed to the above instrument, who acknowledged that he/she/they executed
the instrument for the purposes therein contained.

_____
Notary Public

My Commission Expires: _____

LESLEY JILL SEAT
Notary Public, State of Texas
My Commission Expires
May 26, 2015

**Exhibit "A"**
**Legal Description**

 All that certain parcel of land situate in the City of San Jose, County of Santa Clara, State of California, being known and designated as follows;

Lot 38, as shown on that certain Map of Tract No. 2478 Parkland Manor, which Map was filed for record in the office of the Recorder of the County of Santa Clara, State of California, on October 19, 1959, in Book 113 of Maps, page(s) 11.

Excepting therefrom the underground water or rights thereto, with no right of surface entry, as granted to San Jose Water Works, a California Corporation by instrument recorded December 07, 1959 in Book 4628, page 177, Official Records.

Tax ID: 484-45-040

## PROOF OF SERVICE

I, Marilee V. Johnson, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On August 27, 2012, I served the within **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF  MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF** on all interested parties in this action as follows:

[X]     by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:
     Michael Yesk, Esq.
     70 Doray Dr., Suite 16
     Pleasant Hill, CA  94523
     (510) 909-9700 yesklaw@gmail.com

[X]     (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]     (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]     (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 608-9142, complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of  Service.

[ ]     (BY ELECTRONIC MAIL) I caused each such document to be transmitted electronically to the parties at the e-mail address indicated.  To the best my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not completed.

[ ]     (BY NORCO OVERNITE - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Norco Overnite with the delivery fees provided for.

[X]     (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

[X]     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 27, 2012, at Newport Beach, California.

_Marilee V. John_

Marilee V. Johnson

-1-