1  Michael Yesk (SB#130056)
   Megan Dailey (SB#221574)
   Yesk Law
2  70 Doray Drive, Suite 16
   Pleasant Hill, CA 94523
3  925-849-5525
   yesklaw@gmail.com
4  Attorney for Plaintiff

5

                    UNITED STATES DISTRICT COURT
6
                   NORTHERN DISTRICT OF CALIFORNIA
7
                        SAN JOSE DIVISION
8

9

10  NAOMI ELLIOTT AND L.T. KENNEDY     )  Case No.:  5:12-cv-1204370 HRL
    JR.,                               )
11                                     )  PLAINTIFF'S OPPOSITION TO MOTION
           Plaintiffs,                 )  TO DISMISS PLAINTIFF'S COMPLAINT
12                                     )  FOR FAILURE TO STATE A CLAIM FOR
                                       )  RELIEF
    vs.                                )
13                                     )  Date:  October 2, 2012
    MORTGAGE ELECTRONIC                )  Time:  10:00 AM
14  REGISTRATION SYSTEMS, INC.; POWER  )  Ctrm:  2-5th Floor
    DEFAULT SERVICES, INC.; AND U.S.   )  Judge:  Honorable Howard R. Lloyd
15  BANK, NATIONAL ASSOCIATION;        )
                                       )
16         Defendants.                 )
                                       )
17                                     )
                                       )
18                                     )
                                       )
19  _____)

20

21

22

23

24

25

26

        PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
                     FAILURE TO STATE A CLAIM FOR RELIEF - 1

1

2

### Memorandum of Points and Authorities

3

### Introduction

4

Plaintiffs NAOMI ELLIOTT AND L.T. KENNEDY JR. ("Plaintiffs") herein submits

5

their Opposition to MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO

6

STATE A CLAIM FOR RELIEF pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6).

7

### Factual Background

8

On October 20, 2006, Plaintiffs recorded a Deed of Trust in the Santa Clara County

9

Recorder's Office against the Subject Property to secure a loan in the amount of $500,000 in

10

favor of American Brokers Conduit ("American Brokers") as the original "Lender". The Deed

11

of Trust names MERS as nominee for lender as beneficiary of the security interest in the Deed of

12

Trust. Alliance Title Company is listed as the original Trustee.

13

On November 17, 2009, Power Default Services, Inc. dba Default Resolution Network

14

("PDS") recorded a Notice of Default and Election to Sell Under Deed of Trust in the Santa

15

Clara County Recorder's Office

16

On May 21, 2010, Defendant MERS recorded an Assignment of Deed of Trust in the

17

Santa Clara County Recorder's Office. Through this document MERS purports to assign the

18

beneficial interest under Plaintiff's Deed of Trust to Defendant U.S. Bank, N.A. as Trustee for

19

MASTR Adjustable Rate Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series

20

2007-1 ("Series 2007-1 Trust").

21

On July 28, 2010, Defendant MERS recorded a Substitution of Trustee in the Santa Clara

22

County Recorder's Office. Through this document MERS purports to name Defendant Power

23

Default Services as the new Trustee under the Deed of Trust.

24

On July 28, 2010, Defendant Power Default Services recorded a Notice of Trustee's Sale

25

in the Santa Clara County Recorder's Office, noticing a Trustee's Sale for August 17, 2010.

26

1  Michael Busby, authorized signer for Power Default Services, Inc., as Trustee, signed the Notice

2  of Trustee's Sale.

3     On July 5, 2011, Defendant MERS recorded an Assignment of Deed of Trust in the Santa

4  Clara County Recorder's Office.  Through this document MERS purports to assign the beneficial

5  interest under Plaintiff's Deed of Trust to U.S. Bank, N.A. as Trustee for the Series 2007-1 Trust.

6     On July 5, 2011, Defendant Power Default Services recorded a Notice of Trustee's Sale

7  in the Santa Clara County Recorder's Office, noticing a Trustee's Sale set for July 27, 2011.

8  Michael Busby, authorized signer for Power Default Services, Inc., as Trustee, signed the Notice

9  of Trustee's Sale.

10     On August 2, 2011, a Trustee's Deed Upon Sale was recorded in the Santa Clara County

11  Recorder's Office.  Through this document Defendant Power Default Services purports to

12  transfer title to the Subject Property to the Defendant, U.S. Bank as Trustee for the Series 2007-1

13  Trust, who paid $657,789.73 for the subject property in Trustee Sale No. 09-06371-6.

14     **Law and Argument**

15  I.     **Legal Standard**

16  A Rule 12(b)(6) Motion to Dismiss tests only whether the Plaintiff's Complaint states

17  sufficient facts to state a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

18  544, 557 (2007).  A complaint which contains sufficient factual allegations "to raise a right to

19  relief above the speculative level" will survive a motion to dismiss.  *Id.*  A complaint must state a

20  claim that is facially plausible, requiring facts showing more than a sheer possibility that a

21  defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has

22  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating

24  whether a complaint meets this standard, the court is not required to take the plaintiff's legal

25  conclusions as true, but must take the plaintiff's factual allegations as true, and then "determine

26  whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**II.     Plaintiffs' Claims Are Not Barred By the Tender Rule Because It Does Not Apply**

Defendants PDS, MERS and U.S. Bank, N.A. claim that Plaintiffs lack standing to challenge the foreclosure of their home and to seek injunctive relief because they have failed to tender the full amount due under the note. Without Plaintiffs making such an offer or payment, Defendants argue that the tender rule acts as a complete bar against all of Plaintiffs' causes of action, and thus all their claims should be dismissed. However, the requirement that a borrower seeking to set aside a foreclosure sale must first tender the full amount of the debt is not an absolute rule. In the instant case, Plaintiffs are not precluded from pursuing their causes of action for failing to tender because it would be inequitable to require tender.

A cause of action to enjoin or set aside a trustee's sale is an action in equity. Miller & Starr California Real Estate 3d 10:212; *Tamburri v. Suntrust Mortgage, Inc.* (N.D. Cal. 2011) 2011 WL 6294472, *3. As courts have recognized, a rigid tender rule would often entirely preclude homeowners from challenging wrongful foreclosures. *Sacchi v. Mortgage Electronic Registration Systems, Inc.* (C.D. Cal. 2011) 2011 WL 2533029, *9. Like the Plaintiffs here, most homeowners do not have the funds necessary to pay off the entire balance of their loans at one time. If the tender rule was without exception, homeowners in danger of losing their home through, "error or malfeasance . . . would be unable to hold on to this most precious possession [home]. This would be a grossly inequitable result and would permit entities to foreclose on properties without impunity." *Sacchi*, 2011 WL 2533029 at *9.

To avoid this result, and contrary to what Defendants argue, California courts have recognized that an offer of "tender may not be required where it would be inequitable to do so." *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424 (affirming trial court's grant of relief to plaintiff on rescission claim although plaintiff failed to tender). See also *Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89, 113 ("a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale"); *Sacchi*, 2011 WL 2533029 at *10;

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF - 4

*Tamburri*, 2011 WL 6294472 at *3; *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291 (recognizing "cases holding that, where a party has the right to avoid a sale, he is not bound to tender any payment in redemption" adding that, "[w]hatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale").

In the instant case, as in *Lona, Sacchi* and *Tamburri*, Plaintiffs should not be required to make a full tender offer because they are challenging that Defendants' lacked the legal power to foreclose and requiring tender under these circumstances would be inequitable. Where, as here, the foreclosure completed by Defendants is void due to the fact that a Trustee's Deed issued by Defendant NDEX West while not the true Trustee and will be void, Plaintiffs are not required to tender the amount due to challenge this void foreclosure sale. *Tamburri*, 2011 WL 6294472 at *4 ("where a sale is void, rather than simply voidable, tender is not required"). As the Court found in *Dimock*, a Trustee's Deed issued by an entity who was not the correct Trustee is void. 81 Cal. App. 4th at 876; see also *Lona*, 202 Cal. App. 4th at 113.

### III.   Plaintiffs Named All Parties Known to Them at the Time of Filing the Complaint

Plaintiffs' complaint was filed on April 10, 2012, within approximately six (6) weeks of U.S. Bank's Grant Deed in favor of the third party grantee to this matter. Plaintiffs were under no obligation to  continually check upon U.S. Bank's actions, and filed the complaint alleging causes of action against known Defendants. Plaintiffs acknowledge that while an adequate judgment may be possible under these circumstances, Plaintiffs also maintain a right to add a party under Rule 21.

If an "adequate" judgment can be rendered in the absence of a given person—the court must consider the extent of the relief that can be accorded among the parties joined, meshing the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF - 5

"shaping of relief" afforded to the Plaintiffs under the claims as alleged. Cf. *Kroese v. General Steel Castings Corp.*, 179 F.2d 760 (3d Cir. 1949), cert. denied, 339 U.S. 983 (1950).

Federal Rules of Civil Procedure, Rule 19 uses the word "indispensable" only in a conclusory sense, that is, a person is "regarded as indispensable" when he cannot be made a party and, upon consideration of the factors above mention, it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it.

However, a person may be added as a party at any stage of the action on motion or on the court's initiative (see Rule 21); and a motion to dismiss, on the ground that a person has not been joined and justice requires that the action should not proceed in his absence, may be made as late as the trial on the merits (see Rule 12(h)(2), as amended; cf. Rule 12(b)(7), as amended). However, when the moving party is seeking dismissal in order to protect himself against a later A joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time. Thus the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced. Cf. Rule 12(d).

In this action, Plaintiffs claims arising out of securitization of Plaintiffs' Deed of Trust and the foreclosure documents, do not contemplate wrongdoing of the third party because these claims arose prior to the relevant actions of the third party, therefore, deferring the decision regarding the relationship of the third party to this action until the pleadings have settled is proper in this instance under Rule 12, and Defendants' request for dismissal under Rule 19, should be denied.

**IV.  American Brokers Securitization and Sale of Plaintiffs' Deed of Trust to the Trust, Violated the Pooling and Servicing Agreement and California Civil Code**

Plaintiff is informed and believes and on that basis alleges that the key contract creating the securitization for Plaintiffs' note is called a "Pooling and Servicing Agreement" (pooling as

1    in creating a pool of mortgages, and servicing as in servicing those mortgages.)  The Pooling and

2    Servicing Agreement ("PSA") shows the cut-off date for the Certificates in question in this

3    lawsuit was December 1, 2006.  A true copy of Plaintiffs' Securitization Compliance Audit is

4    attached to the Declaration of Megan Dailey as Exhibit A.  See Ex. A, p. 4.  Defendants, and

5    each of them, failed to follow the PSA, failed to endorse the note and assign the deed of trust in a

6    timely manner as set forth in the PSA, and failed to properly identify the true party of interest in

7    their foreclosure action.

8         Plaintiff is informed and believes and on that basis alleges that securitization trusts are

9    not allowed to simply take any property. In fact, to preserve their special tax status, they are

10   forbidden from taking property after their cut-off dates, which in this case was December 1,

11   2006.  Until the delivery to the trustee is performed by the settlor, or until the securities are

12   definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of

13   the beneficiary in a trust created without consideration arise.  *Riegel v. Central Hanover Bank &*

14   *Trust Co.,* 266 App. Div. 586.  As a result, if the trust does not own the loan and has not taken

15   delivery of the original note by the cut-off date, according to the PSA it can't receive the

16   proceeds of the foreclosure or the title to the home, even if it's allowed to foreclose as a holder of

17   the deed of trust.  According to the terms of the PSA, all promissory notes transferred to the

18   Trust are required to have a complete chain of endorsements from the original payee thereof to

19   either "Blank" or to the Trustee for the specific Trust.  The PSA requires this complete chain of

20   endorsements to be in place by the Trust's closing date or under no circumstances later than 90

21   days after the Trust's closing date. Therefore the last possible day to transfer to the Trust within

22   the terms of the Trust agreement was April 16, 2007 (90 days after closing date of January 16,

23   2007), and the first assignment in favor of U.S. Bank was not recorded until May 21, 2010.  The

24   servicer in the present case is trying to force through a foreclosure in the name of a trust that

25   clearly has no interest in the underlying loan according to the terms of the pooling and servicing

26

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 7

1    agreement.  This conduct is a fraud on the borrower, a fraud on the investors and a fraud on the

2    court.

3        Under the Plaintiffs' theory of the case it is clear that the Trust is a stranger to Plaintiffs

4    mortgage loan and that success upon their claims against the Trust will affect the ability of U.S.

5    Bank as Trustee to foreclose under the deed of trust executed in conjunction with his home

6    mortgage loan.

7        Plaintiff is informed and believes and on that basis alleges that in order to maintain the

8    integrity of the transaction for the investors, the original lender must accomplish two goals.

9    First, is ensuring favorable tax treatment of the bank, the securitization trust, and the investors,

10    ideally through the securitization trust having "pass-thru" tax status, meaning that the

11    securitization trust is not taxed on its own income when it is paid on the receivables.  Second,

12    Bankruptcy remoteness is critical for making the economics of securitization work. By insulating

13    the receivables placed in the trust from the claims of the bank's creditors, securitization enables

14    investors to invest based solely on the quality of the receivables and not have to worry about the

15    bank's other business activities. To accomplish this, the bank conveys receivables to a trust for

16    the benefit of certificate holders.  Furthermore, and perhaps more critical, is ensuring that the

17    trust's assets are "bankruptcy remote," meaning that they are insulated from the claims of the

18    bank's creditors. This involves ensuring that the transfer of the receivables to the trust is a "true

19    sale" and not a financing transaction.

20        Plaintiffs' Securitization Compliance Audit indicates that U.S. Bank is in breach of their

21    own Pooling and Servicing Agreement and in violation of IRS Code Sec. 860G (2004, as

22    amended).

23        Plaintiff is informed and believes the securitized trust must have received the Assignment

24    of the Beneficial Interest of the Deed of Trust within 90 days of the close of the Trust, pursuant

25    to the Pooling and Service Agreement ("PSA") for this Trust.  In this case the Assignment

26    (recorded on May 21, 2010), was not done (signed on April 21, 2010) until after the borrower

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 8

1    defaulted, (NOD recorded on November 17, 2009) and years after the cut-off date for the Trust

2    (December 1, 2006.)  See Audit, pp. 4-5.  Late recording was a business practice of U.S. Bank

3    that saved thousands of dollars of recording fees, preparation fees, etc.  The consequence,

4    however, is that all those loans are not assets of the Trust, including Plaintiffs Deed of Trust.

5    Therefore, Defendant would either need to disclaim the asset if the Trust wishes to remain a

6    pass-through entity, or pay the 35% corporate/trust tax rate on all of its income.  Plaintiffs'

7    counsel on behalf of Plaintiffs, is a whistleblower to this scheme under the authority and at the

8    request of the Internal Revenue Service, pursuant to 26 U.S.C. 7801(1982, as amended), for the

9    purpose of reporting potential violations of Internal Revenue laws.  See Form 3949A, attached to

10   the Declaration of Megan Dailey as Exhibit B.

11        The cut-off date for the U.S. Bank trust was December 1, 2006, and according to the Real

12   Estate Mortgage Investment Conduit (REMICs) Reporting Information, IRS Publication 938,

13   2008, (relevant portions are attached to the Declaration of Megan Dailey as Exhibit C), the Trust

14   was no longer reporting income as of 2008.  Therefore, any Assignment occurring in 2010 could

15   not have REMIC status, and the advantageous tax treatment associated therewith.  This scheme

16   to avoid taxes and fees is the motive for Defendant's aforementioned breach of Defendant's PSA

17   and violations of TILA and should not be sanctioned by this court.

18        Defendant also violated RESPA by failing the Housing and Urban Development's

19   (HUD's) 1999 Statement of Policy two-part test for determining the legality of lender payments

20   to mortgage brokers for table funded transactions and intermediary transactions under RESPA.

21   This test requires that total compensation be scrutinized to assure that it is reasonably related to

22   the goods, facilities, or services furnished or performed to determine whether it is legal under

23   RESPA and that the interest and income that Defendant has gained is not disproportionate to the

24   situation.  Defendant's failure to disclose that they will gain a financial benefit while Plaintiff(s)

25   suffer financially as a result of the loan product, sold to Plaintiff(s) amounts to a RESPA

26   violation under this test in that the benefit to Defendant (also while in violation of its own

1  governing documents (the PSA), Californa law, Civil Code § 2932.5, and TILA) is

2  unconscionable in the face of the detriment to Plaintiffs of foreclosure and loss of equity and/or

3  interest in the property.  Defendant violated RESPA because the payments between the

4  Plaintiff(s) and Defendant were misleading and designed to create a windfall, and not reasonably

5  related to services performed. These actions were deceptive, fraudulent and self-serving.

6  Defendants' violation of the PSA indicates a breach of RESPA as stated herein due to the

7  unconscionability of the transaction.  The late recording of the assignment invalidates the

8  foreclosure , due to this and other violations, despite the provisions of California Civil Code §

9  2934, because it is otherwise objectionable and illegal as alleged herein.

10       V.     **Plaintiffs State Facts Sufficient to Support a Cause of Action for Slander of Title**

11       The elements of a claim for slander of title are: "1) a publication, 2) which is without

12  privilege or justification, 3) which is false, and 4) which causes direct and immediate pecuniary

13  loss." *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal. App. 4th 1040, 1051 .

14       **A. Defendants Recorded False Documents**

15       Defendants maintain that Plaintiffs' title was not "disparaged" because no false documents

16  were recorded and thus Plaintiffs' slander of title claim must fail.  Contrary to

17  Defendants'contentions, however, false documents were recorded, thus disparaging Plaintiffs'

18  title.  The NOD recorded on November 17, 2009 is invalid because the NOD is signed by

19  Emmanual Woldeyohannes, employee of LSI Title Company, Agent for PDS.  However,

20  Plaintiffs are informed and believe that Mr. Woldeyohannes is not in fact an employee of

21  Defendant LSI Title Company but instead Mr. Woldeyohannes is an employee of U.S. Bank and

22  has signed documents on its behalf.  Thus, it is unclear whether Mr. Woldeyohannes had the

23  authority to sign on behalf of Defendant PDS.  By recording a document signed by Mr.

24  Woldeyohannes, purportedly on behalf of PDS, when the evidence indicates that Mr.

25  Woldeyohannes is an employee of U.S. Bank, Defendants acted with malice and reckless

26

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 10

1   disregard for the truth.  For the reason just stated above, therefore, the November 17, 2009 NOD

2   is false and invalid.

3       The NOD is false both because it was signed by Mr. Woldeyohannes without authority

4   because Mr. Woldeyohannes was actually an employee of U.S. Bank and because there is no

5   proper declaration of compliance with California Civil Code § 2923.5.  Mr. Woldeyohannes's

6   statement of due diligence is insufficient as a matter of law.

7       In fact, Plaintiffs are informed and believe and on that basis allege that Defendants were not

8   the Beneficiary of the Deed of Trust as of November 17, 2009, the approximate date of the

9   defective NOD, due to the failure to record the assignment to U.S. Bank as Trustee.

10      California Civil Code §2923.5 requires the Beneficiary under a Deed of Trust use due

11  diligence to contact the borrower prior to filing a Notice of Default.

12      On or about November 17, 2009, Mr. Woldeyohannes purported to sign the NOD stating that

13  the borrower was actually contacted or the mortgagee, beneficiary or [authorized agent] tried

14  with due diligence to contact the borrower as required by Cal. Civil Code 2923.5.

15      This statement is either insufficient as a matter of law, as Mr. Woldeyohannes does not

16  testify or state that he has personal knowledge of any of the facts stated in said Notice, or simply

17  untrue.  Mr. Woldeyohannes had no way of knowing who the actual owner of the loan was at

18  that time.

19      Plaintiff is further informed and believes and on that basis alleges that Mr. Woldeyohannes

20  was a robo-signer, signing hundreds of Notices a day without any knowledge as to the truth or

21  veracity of the facts contained therein.

22      California Civil Code §2934(a) states that "A trustee named in a recorded Substitution shall

23  be deemed to act as trustee under the mortgage or deed of trust for all purposes from the date the

24  substitution is executed."  The foreclosure activities of Defendants PDS were not authorized by

25  the actual Beneficiary of the Deed of Trust as of the date the Notice of Default was executed

26  because the Trust closed on January 16, 2007 and an assignment did not take place until at the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 11

1   earliest, May 21, 2010.   U.S. Bank, as Trustee did not accede to the beneficial interest in

2   Plaintiffs' Deed of Trust, because the assignment to U.S. Bank violated the PSA.

3       California Civil Code §2932.5 states that "Where a power to sell real property is given to a

4   mortgagee or encumbrancer, in an instrument intended to secure the payment of money, the

5   power is part of the security and vests in any person who by assignment becomes entitled to

6   payment secured by the instrument.  The power of sale may be exercised by the assignee if the

7   assignee is duly acknowledged and recorded."  PDS did not have authority to act as the Trustee

8   of the Deed of Trust at the time that the defective Notice of Default was signed and recorded.

9       California Civil Code §2934(a) states that "A trustee named in a recorded Substitution shall

10  be deemed to act as trustee under the mortgage or deed of trust for all purposes from the date the

11  substitution is executed."  The foreclosure activities of Defendant PDS were not authorized by

12  the actual Beneficiary of the Deed of Trust as of the date the Notice of Default was executed.

13      California Civil Code §2932.5 states that "Where a power to sell real property is given to a

14  mortgagee or encumbrancer, in an instrument intended to secure the payment of money, the

15  power is part of the security and vests in any person who by assignment becomes entitled to

16  payment secured by the instrument.  The power of sale may be exercised by the assignee if the

17  assignee is duly acknowledged and recorded."  PDS and U.S. Bank had no right to act as of

18  November 17, 2009, when it recorded the fraudulent Notice of Default.

19      In the case of a fraudulent transaction, California law is settled.  The court in *Trout v. Trout*

20  (1934) 2220 Cal. 652 at 656, held that an instrument wholly void cannot be made the foundation

21  of good title. This decision was followed in *Angels Inc. V. Stuart Wright Mortgage, Inc.* (2001)

22  85 Cal.App.4th 1279 at 1286, where the court stated: "It is the general rule that courts have the

23  power to vacate a foreclosure sale where there has been found in the procurement of the

24  foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is

25  tainted by fraud.

26

1  California Civil Code §2823.6(a) broadened this requirement to hold that a servicer acts in

2  the best interest of all parties if it agrees to or implements a loan modification where the loan is

3  in default, and anticipated recovery through foreclosure on a net present value basis is less than

4  that of a loan modification.

5  Despite the foregoing California Civil Code provisions, all Defendants maliciously

6  disregarded the intent of the California legislature to assist borrowers by attempting to foreclose

7  on the subject property in violation of said statutes. Defendants have refused Plaintiffs' efforts to

8  modify the subject loan to current terms as required by law.

9  The Court in *Ortiz v. Accredited Home Lenders*, (SD Cal 2009) 639 F.Supp.2nd 1159 held

10  that Civil Code §2823.5 included a private right of action, as the legislature would not have

11  enacted the urgency legislation without any accompanying enforcement mechanism.

12  The workout opportunity and the due diligence requirement of the Civil Code sections are

13  mandatory, and failure to comply with the statutory duty is negligence per se (Evidence Code

14  §669(a) (1)).

15  Any foreclosure activity, trustee sale or unlawful detainer actions of Defendants, and each of

16  them, are improper, wrongful and without legal authority.

17  Any foreclosure notice that is statutorily defective is invalid as a matter of law. *Mitra v. Cote*

18  (1982) 127 Cal.App.3d 888, at 894; *Swealth v. Foreclosure Co.* (1985) 166 Cal.App.3d 273, at

19  278; and *Wanger v. EMC Mortgage Co.* (2002) 103 Cal.app.4th 1125. California Civil Code

20  §2924 provides consumer protection against wrongful foreclosure to California debtors as the

21  state has an interest in the protection of debtors, see, *e.g.*, *Wells Fargo N.A. v. La Jolla Group*

22  (2005) 129 Cal.App.4th 706.

23  Defendants PDS, MERS and U.S. Bank violated California Civil Code Section 2923.5 by

24  failing to contact Plaintiffs, in person or by telephone, at least 30 days prior to recording the

25  NOD on November 17, 2009 and/or recording a declaration attesting to compliance by a person

26  with personal knowledge of these facts. There is no statement in the NOD recorded November

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 13

1  17, 2009 stating with personal knowledge that someone tried with due diligence to contact the

2  borrower as required under Section 2923.5 and Defendants failed to exercise due diligence in

3  attempting to contact Plaintiffs as required by Section 2923.5.  Nor was U.S. Bank assigned if at

4  all, any interest in the Property.

5  Defendants PDS, MERS and U.S. Bank's failure to comply with the Notice and Contact

6  requirements of Section 2923.5 renders the NOD, false, and all subsequent proceedings based on

7  said Notice, invalid and void.  *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 236-37

8  (2010) (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial

9  foreclosure may only proceed if a new, valid Notice of Default is recorded).

10  The NOD is also false because PDS had no authority to act, if at all, until July 28, 2010 when

11  the Substitution of Trustee was recorded.

12  The May 21, 2010 Assignment of the Deed of Trust to Defendant U.S. Bank, as Trustee, is

13  invalid and of no legal effect because U.S. Bank failed to record its interest in the Deed of Trust

14  within 90 days of the closing date of the trust.   Therefore, on May 21, 2010, the Trust could not

15  become the beneficial interest holder and could not validly receive that interest from Defendant

16  MERS.

17  The July 28, 2010 Substitution of Trustee is false because it was signed by Cindi Ellis,

18  Assistant Vice President, allegedly on behalf of Defendant MERS.  However, Cindi Ellis is not

19  in fact an employee of Defendant MERS, but instead Ms. Ellis is an employee of Defendant U.S.

20  Bank and has signed foreclosure related documents on its behalf.  By recording a document

21  signed by Cindi Ellis, purportedly on behalf of Defendant MERS, when the evidence indicates

22  that Ms. Ellis is an employee of Defendant U.S. Bank, Defendants acted with malice and

23  reckless disregard for the truth.   For both the reasons just stated above, therefore, the July 28,

24  2010 Substitution of Trustee is false and invalid.

25

26

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 14

1    Plaintiffs' Deed of Trust provides that the Lender may appoint successor trustees.  See Deed

2    of Trust, p. 13, ¶ 24, a true copy of which is attached as Exhibit D to Declaration of Megan

3    Dailey.  This never happened in the instant matter.

4    Here, there was never any valid Substitution of Trustee because U.S. Bank substituted itself

5    in as Trustee, when Cindi Ellis signed the Substitution of Trustee as Asst. Vice President of

6    MERS, when she was in fact an employee of U.S. Bank.

7    Plaintiffs' Deed of Trust limits appointment of successor trustees to the powers of the Lender

8    and names the Lender in this case as American Brokers.  Plaintiffs allege on information and

9    belief that Cindi Ellis is a robo-signer, who has no personal knowledge of the facts that she

10   declares she knows and was never properly authorized to act on behalf of the true beneficiaries

11   of the Note and Deed of Trust, and in any case is not employed by American Brokers.  The

12   Substitution of Trustee recorded on July 28, 2010 is invalid and therefore false by the terms of

13   Plaintiffs' Deed of Trust.

14   Because the Substitution of Trustee failed, Defendant PDS is not the Trustee under Plaintiff's

15   Deed of Trust and cannot exercise any powers given the Trustee.  Thus, Defendant PDS could

16   not issue a valid Notice of Trustee's Sale, rendering the July 28, 2010 Notice of Trustee's Sale

17   invalid.  Defendant PDS acted with malice and a reckless disregard for the truth when it recorded

18   a Notice of Trustee's Sale despite lacking the legal authority to act as the Trustee under

19   Plaintiff's Deed of Trust.

20   The July 5, 2011 Assignment of the Deed of Trust to Defendant U.S. Bank, as Trustee, is

21   invalid and of no legal effect because U.S. Bank failed to record its interest in the Deed of Trust

22   within 90 days of the closing date of the trust.   Therefore, on July 5, 2011, the Trust could not

23   become the beneficial interest holder and could not validly receive that interest from Defendant

24   MERS.

25   And these recorded documents were signed by robo-signers without personal knowledge.

26

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 15

1    Defendants recordings of the November 17, 2009 NOD, May 21, 2010 Assignment of Deed

2    of Trust, July 28, 2010 Substitution of Trustee, July 28, 2010 Notice of Trustee's Sale, July 5,

3    2011, Assignment of Deed of Trust, and July 5, 2011 Notice of Trustee's Sale were false,

4    knowingly wrongful, without justification, in violation of statute, unprivileged, and caused doubt

5    to be placed on Plaintiff's title to the property.  The false recordation of the foregoing documents

6    directly impairs the vendibility of Plaintiff's property on the open market in the amount of a sum

7    to be proved at trial.

8    **B.  Defendants' Actions Were Not Privileged**

9    //

10    //

11    //

12    //

13    //

14    //

15    //

16

17

18

19

20

21

22

23

24

25

26

1    While Defendant correctly notes that the qualified common interest privilege of

2    California Civil Code section 47(c)(1) applies to the documents required by the non-judicial

3    foreclosure scheme, this privilege is not absolute.   Instead, the privilege only protects

4    communications made without malice.   In this context, "malice is defined as actual malice,

5    meaning that the publication was motivated by hatred or ill will towards the plaintiff or by a

6    showing that the defendant lacked reasonable grounds for belief in the truth of the publication

7    and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz* (2008)

8    168 Cal. App. 4th 316, 336  (citations omitted, emphasis in original).

9    Here, Defendants PDS, MERS and U.S. Bank acted with malice by recording the

10   Substitution of Trustee while aware that it could not be the true beneficial interest holder of

11   Plaintiffs' Deed of Trust.  Defendant U.S. Bank then acted with malice by relying on the false

12   Substitution of Trustee, to record the false Notice of Trustee's Sale.  Acting with "[m]ere

13   inadvertence, or careless blundering" is insufficient to prove malice, but, here Defendants acted

14   with malice by recording these documents in reckless disregard of the facts underlying this

15   foreclosure process. *Id.* at 344.  Moreover, contrary to Defendants' contention Plaintiffs need

16   not have pled a cause of action for fraud in order to maintain their cause of action for slander of

17   title as each is a separate and distinct cause of action.  At this stage, Plaintiffs have pled

18   sufficient facts to show that a demurrer on the basis of privilege is unwarranted.

19   **VI.    Foreclosure by the Wrong Party With No Right to the Beneficial Interest is the**

20   **Required Prejudice and Harm Suffered by Plaintiffs  Under its Slander of Title**

21   **Claim and Grounds for Wrongful Foreclosure**

22   Courts have found that "[r]egardless of whether § 2932.5 applies, Plaintiff may still assert

23   that only an authorized entity may initiate foreclosure.   See Cal. Civ. Code §

24   2924(a)(1)(requiring the notice of default to be issued by the "trustee, mortgagee, or beneficiary,

25   or any of their authorized agents")." *Tamburri v. Suntrust Mortgage, Inc.,* 2011 WL 6294472

26   *11 (N.D. Cal. 2011); see also *Robinson v. Countrywide Home Loans, Inc.,* 199 Cal.App.4th 42,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 17

1  46 (2011) (holding that while a borrower may not preemptively challenge the standing of a

2  foreclosing entity, "a borrower who believes that the foreclosing entity lacks standing to do so ...

3  can seek to enjoin the trustee's sale or to set the sale aside") and *Sacchi v. Mortgage Electronic*

4  *Registration Systems, Inc.*, 2011 WL 2533029 *9–10 (C.D.Cal. 2011) (holding that Plaintiff had

5  stated a valid claim for wrongful foreclosure claim based on the allegation that the foreclosing

6  entity had "no beneficial interest in the Deed of Trust when it acted to foreclose on Plaintiffs'

7  home").   Thus, Plaintiffs may therefore assert a claim that the foreclosing parties lack any

8  interest in the Subject Property.

9  Moreover, in *Lona*, the court set forth the elements of an equitable cause of action to set

10 aside a foreclosure sale:

11

12 (1) the trustee or mortgagee caused an illegal, fraudulent, or
    willfully oppressive sale of real property pursuant to a power of

13 sale in a mortgage or deed of trust; (2) the party attacking the sale
    (usually but not always the trustor or mortgagor) was prejudiced or

14 harmed; and (3) in cases where the trustor or mortgagor challenges
    the sale, the trustor or mortgagor tendered the amount of the

15 secured indebtedness or was excused from tendering.
    202 Cal. App. 4th at 104.

16

17 Here, Plaintiffs contend that a foreclosure sale of Plaintiffs property is illegal and oppressive

18 because Defendant U.S. Bank was never the true beneficiary and thus lacked the power of sale.

19 As discussed above, MERS also could not have validly substituted PDS as the Trustee under

20 Plaintiffs' Deed of Trust.  Plaintiffs therefore contend that PDS is not the true Trustee and cannot

21 notice a Trustee's Sale, rendering the July 5, 2011 Notice of Trustee's Sale invalid.   Thus,

22 allowing Defendant PDS who was not the true Trustee, to conduct a Trustee's Sale of Plaintiffs'

23 home on behalf of Defendant U.S. Bank, when it was not the beneficiary, violated the statutory

24 scheme governing non-judicial foreclosures and caused Plaintiffs to wrongfully lose their

25 property. See Cal. Civ. Code § 2924 et seq.

26

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 18

1    Moreover, Defendant PDS and U.S. Bank acted illegally to sell the Subject Property despite

2    the fact that it was not the Trustee or beneficiary.  Permitting Defendants to retain the proceeds

3    of an illegal trustee's sale would therefore be contrary to justice.  Cal. Civ. Code § 2934a;

4    *Dimock v. Emerald Properties, Inc.* (2000) 81 Cal. App. 4th 868, 876 (holding Trustee's Sale

5    void where it was completed by an entity who was not in fact the trustee, as the original trustee

6    completed the sale after there had been a valid substitution of trustee).

7        Defendants' actions in wrongfully foreclosing on Plaintiffs' property in violation of the

8    statutory scheme governing non-judicial foreclosures were prejudicial and harmful to Plaintiffs

9    because these actions deprived Plaintiffs of the protection of these important statutes intended to

10   protect borrowers and to ensure they do not wrongfully lose their homes to entities without any

11   interest in the Subject Property.  Allowing a foreclosure completed in violation of the statutory

12   scheme to stand would render these statutes ineffective for the very purpose for which they were

13   enacted.  As the court stated in *Moeller v. Lien* (1994) 25 Cal. App. 4th 822, 830:

14       The purposes of this comprehensive scheme are threefold: (1) to provide the

15   creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting

16   debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to

17   ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide

18   purchaser.

19       Plaintiffs are being subjected to the foreclosure process, because Defendants were cavalier

20   with their compliance with the non-judicial foreclosure statutes, forcing them to bring this action

21   to protect their rights as borrowers.

22       Plaintiffs lost title to the Subject Property because Defendants were cavalier with their

23   compliance with the non-judicial foreclosure statutes, forcing them to bring this action to protect

24   their rights as borrowers.

25       As discussed above, Plaintiffs are excused from compliance with the tender rule where the

26   sale is void. *Tamburri*, 2011 WL 6294472 at *4 ("where a sale is void, rather than simply

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 19

voidable, tender is not required").  Here, the Trustee's is void because it was conducted by an entity that was not the rightful Trustee. *See Dimock*, 81 Cal. App. 4th at 876; *Lona*, 202 Cal. App. 4th at 113.  Thus, Plaintiffs should be allowed to proceed with their claim for wrongful foreclosure because they have met all three elements of the *Lona* cause of action.

## VII. Conclusion

Plaintiffs respectfully request that the Court overrule Defendant's Motion to Dismiss Plaintiffs' Complaint and further respectfully requests that if the Court sustains the Motion to Dismiss, then the Court grants Plaintiffs leave to amend the Complaint.

DATED: September 10, 2012                      _____/s/_____

Megan Dailey
Yesk Law
70 Doray Dr., Suite 16
Pleasant Hill, CA 94523
Telephone: 925-849-5525
yesklaw@gmail.com
Attorney for Plaintiff

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM FOR RELIEF - 20